Harvey A. Strickon, Esq.
Bryan R. Kaplan, Esq.
PAUL, HASTINGS, JANOFSKY & WALKER LLP
Park Avenue Tower
75 E. 55th Street, First Floor
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Counsel to the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PENZANCE CASCADES NORTH, LLC, *et al.*,** | **Case No. 10-16643 (REG)** |
| **Debtors.** | **(Jointly Administered)** |

**DEBTORS' EMERGENCY MOTION FOR ORDER (A) AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) PAYMENT OF AMOUNTS UNDER MORTGAGE LOAN; (B) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Penzance Cascades North, LLC and its affiliated debtors, as debtors in possession

(collectively, the "Debtors"), respectfully represent:

**PRELIMINARY STATEMENT**

1.      The Debtors have successfully obtained refinancing (the "Refinancing") for the

existing mortgage loan currently in the principal amount of $107,000,000 (the "Mortgage Loan")

encumbering four office buildings located in Reston, Virginia owned by the Debtors

(the "Properties").  By this emergency motion (the "Motion"), the Debtors seek entry of an order

(the "Sale Order"), attached as <u>Exhibit 1</u> hereto, approving the sale (the "Sale") of the Properties to newly formed affiliates (the "Purchaser") of Garrison Investment Group LP ("Garrison") in connection with the Refinancing.

2.       The Refinancing is scheduled to close on or about March 25, 2011 (the "Closing Date").  In order to close the Refinancing, however, the refinancing lenders (the "Post-Sale Lenders") have required, as a condition precedent to closing, that the Properties be transferred to the Purchaser.  It therefore is essential that the Sale Order be entered so that the Refinancing can close.

3.       Proceeds from the Sale (which consist of the proceeds of the Refinancing and an additional equity infusion from Garrison) are more than sufficient to pay all creditors of the Debtors in full – including the lenders under the Mortgage Loan (the "Pre-Sale Lenders") – and to completely satisfy all administrative liabilities incurred by the Debtors during their chapter 11 cases, including payment of all fees of the Office of the United States Trustee.  The Sale therefore paves the way for an expedited conclusion to these chapter 11 cases.

4.       On the Closing Date, the Debtors shall pay the Pre-Sale Lenders all undisputed amounts owed, including the principal amount of the Mortgage Loan, the pre and post-petition contract rate interest due under the Mortgage Loan, and pre and post-petition default rate interest due under the Mortgage Loan.  In addition, the Debtors shall deposit all disputed amounts allegedly due under the Mortgage Loan (approximately $2,000,000, or **less than 2% of the principal of the Mortgage Loan**) into escrow, and such amounts shall be paid promptly to the Pre-Sale Lenders in accordance with a subsequent ruling of this Court on such amounts.  Lastly, the Debtors shall deposit approximately $1,000,000 into a Wind Down Account (defined below),

which will be used to pay all other creditors of the Debtors in full, as well as to satisfy all administrative liabilities incurred by the Debtors during these cases.[1]

5.      The Debtors, in the exercise of their sound business judgment, believe that the Sale is in the best interests of the Debtors' estates and creditors, in that it will allow all creditors, including the Pre-Sale Lenders, to be paid in full, and for these chapter 11 cases to be brought to a conclusion. The Debtors therefore respectfully request that the Court enter the Sale Order in substantially the form attached hereto.

## BACKGROUND

### General

6.      On December 15, 2010 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      The Debtors were formed for the purpose of acquiring, renovating and operating the Properties. In order to finance the acquisition and renovation of the Properties, the Debtors obtained the Mortgage Loan from UBS Real Estate Securities, Inc. ("UBS"), pursuant to the terms of a loan agreement dated as of July 20, 2007, as amended (the "Loan Agreement"). The Mortgage Loan is secured by a Deed of Trust, Security Agreement and Fixture Filing (the "Mortgage"), made to Lawyer's Title Realty Services, Inc., as trustee, for the benefit of UBS. The Mortgage encumbers each of the Properties.[2]

---

[1]      The Debtors estimate that the claims held by general unsecured creditors of the Debtors are no more than $350,000 in the aggregate.

[2]      UBS subsequently created two participation interests in the Mortgage Loan: (1) a senior participation, with a principal amount of $67,500,000 and (2) a junior participation, with a principal amount of $39,500,000. The senior participation was securitized and assigned to Wells Fargo, N.A. as Trustee for UBS Commercial Mortgage Securities Trust 2007-FLI, Commercial Mortgage Pass-Through Certificates, Series 2007-FL1,

**The Sale Transaction**

8.      The Refinancing is the culmination of over three months of diligence and negotiations with four potential lenders to restructure the Debtors' debt.[3]  Under the terms of the Refinancing, the Purchaser will borrow $60,000,000 (the "New Mortgage Loan") from the Post-Sale Lenders.  In addition, Garrison will make an equity investment in the Purchaser in the amount of $40,000,000 (the "Equity Investment").  The combined proceeds from the New Mortgage Loan and the Equity Investment (the "Sale Price") will then be used by the Purchaser to purchase the Properties through the Sale.[4]  The Sale Price is more than sufficient to pay all creditors of the Debtors in full – including the Pre-Sale Lenders – and to completely satisfy all administrative liabilities incurred by the Debtors during their chapter 11 cases, including payment of all fees of the Office of the United States Trustee.

9.      In accordance with the terms of the Refinancing and to consummate the Sale, after entry of the Sale Order and upon the Closing Date, the Debtors, Purchaser and the Post-Sale Lenders will cause the following transactions (the "Sale Transaction") to occur:

    a.  Payment of Sale Price.  The Purchaser shall pay the Sale Price to the Debtors.

    b.  Transfer of Properties.  The Properties shall be transferred by deed to the Purchaser.  In accordance with the Sale Order, the Properties shall be transferred free and clear of all Claims[5] and Encumbrances[6] pursuant to section 363 of the Bankruptcy Code.

---

and the junior participation was assigned to, and as of the Petition Date was held by, Normandy Reston Office, LLC.

[3]     Several dozen potential lenders in total were contacted in connection with the Refinancing.

[4]     In addition, over $18 million in cash is being held by the Debtors.

[5]     "Claim" has the meaning given that term in Section 101(5) of the Bankruptcy Code and includes, among other things, all rights, claims, causes of action, defenses, debts, demands, damages, offset rights, recoupment rights, obligations and liabilities of any kind or nature under contract, at law or inequity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto.

c. Payment of Undisputed Indebtedness. The Debtors shall pay to Green Loan Services LLC, the special servicer of the Mortgage Loan (the "Special Servicer"), the principal, pre and post-petition contract rate interest, and pre and post-petition default rate interest in excess of $3 million under the Mortgage Loan (the "Undisputed Indebtedness").

d. Payment into Escrow Account on Account of Disputed Indebtedness. The Debtors shall deposit all other amounts claimed by the Special Servicer under the Mortgage Loan, in the aggregate amount of approximately $2 million, comprised primarily of a liquidation fee in excess of $1 million and excessive legal fees incurred by the Special Servicer (the "Disputed Indebtedness"), to an escrow agent mutually agreeable to the Debtors and the Special Servicer.[7] The Debtors respectfully request that a hearing to consider the Disputed Indebtedness subsequently be held by this Court shortly after the Closing Date. Any amounts determined to be due and owing to the Pre-Sale Lenders would be paid promptly out of such escrowed amount pursuant to the determination of this Court.

e. Segregation of Wind Down Funds. The Debtors shall deposit $1,000,000 into a newly formed segregated and interest bearing account (the "Wind Down Account"), and such funds will be used to pay all creditors of the Debtors (other than the Pre-Sale Lenders) in full, as well as to satisfy all administrative liabilities incurred by the Debtors during their chapter 11 cases, including quarterly fees of the United States Trustee (collectively, the "Wind Down Expenses"). Upon payment of all Wind Down Expenses, the Debtors shall remit the balance remaining in the Wind Down Account, if any, to the Purchaser.

## Extraordinary Provisions Under the Guidelines

10. The Sale Order contains the following provisions which may be considered "Extraordinary Provisions" under the Amended Guidelines for the Conduct of Asset Sales established by the Bankruptcy Court on November 18, 2009 pursuant to General Order M-383 Amending M-331:

---

[6] "Encumbrance" means any lien (as defined in Section 101(37) of the Bankruptcy Code), encumbrance, claim (as defined in Section 101(5) of the Bankruptcy Code), right, demand, charge, mortgage, deed of trust, purchase option, pledge, security interest or similar interests, and for real property interests, any title defects, hypothecations, easements, conditional sale or other title retention agreements and other imperfections or defect of title or restrictions on transfers.

[7] The Debtors were not party to any agreement that allegedly gives rise to the liquidation fee and are not liable for its payment. The Special Servicer has repeatedly denied the Debtors' request for the back-up documentation regarding both the disputed legal fees and the liquidation fee.

a. <u>Sale to Insider</u>.  The Purchaser is a non-debtor affiliate of the Debtors. Nevertheless, the Sale is warranted because it will allow the Refinancing to close, and for the payment in full of all creditors of, and administrative liabilities incurred by, the Debtors.  There has been no fraud or collusion between the Purchaser and the Debtors with respect to the Sale Transaction, and the terms of the Sale have been fully disclosed herein and in the Sale Order.

b. <u>Private Sale/No Competitive Bidding</u>.  The Sale is a private sale and there has been no competitive bidding process for the Properties.  The Sale is being consummated strictly for the purpose of allowing the Sale Proceeds to be brought into the Debtors' estates so that all creditors and administrative liabilities may be paid in full and the chapter 11 cases brought to an expeditious conclusion.

c. <u>Deadlines that Effectively Limit Notice</u>.  In light of the imminent Closing Date, this Motion has been filed on an emergency basis.  The Debtors therefore have not been able to provide the 21 days notice required by Rule 2002(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") to all interested parties.  The shortened notice period does not, however, materially affect or disadvantage any party in interest because all creditors of the Debtors will be paid in full, and all administrative liabilities satisfied.  Moreover, the Special Servicer is the only party to have appeared in these chapter 11 cases, and the Special Servicer will have adequate time to respond to the Motion if it so chooses.

d. <u>Use of Proceeds</u>.  The Sale Price will be used to pay all creditors in full and satisfy administrative liabilities, as well as to pay any additional wind-down expenses necessary to facilitate the closure of these chapter 11 cases.

e. <u>Record Retention</u>.  The Purchaser is a non-debtor affiliate of the Debtors.  As such, the Debtors will have reasonable access to their books and records to enable them to administer the chapter 11 cases following the Sale.

f. <u>Relief from Bankruptcy Rule 6004(h)</u>.  The Debtors request relief from the ten-day stay imposed by Bankruptcy Rule 6004(h).  As delays to the Sale could jeopardize the Refinancing, legitimate reasons exist for this Court's approval of an order waving the requirements of Bankruptcy Rule 6004(h).

## **<u>JURISDICTION</u>**

11.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

12.     By this Motion, the Debtors seek entry of the Sale Order substantially in the form annexed hereto (a) authorizing (i) the sale of substantially all of the Debtors' assets free and clear of all claims, encumbrances and other interests and (ii) payment of all amounts under the Mortgage Loan, (b) approving the assumption and assignment of executory contracts and unexpired leases, and (c) granting related relief.

## BASIS FOR RELIEF

### The Sale is an Exercise of Sound Business Judgment

13.     Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Second Circuit Courts have held that the decision to sell assets outside the ordinary course of business must be based on the sound business judgment of a debtor. *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 466 (2d Cir. 2007) (holding that an asset sale under section 363(b) is permissible if the judge determining the sale expressly finds there is good business justification for the sale); *see also Licensing By Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997) ("sale of a substantial part of a Chapter 11 estate . . . may be conducted if a good business reason exists to support it."); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that, in considering a section 363(b) motion, "a bankruptcy judge must not be shackled with unnecessarily rigid rules when exercising the undoubtedly broad administrative power granted him under the Code," but must simply find a "good business reason" supporting the proposed transaction).

14.     The proposed Sale is based on the sound business judgment of the Debtors.  **The Sale will result in payment in full of all creditors of the Debtors <u>and</u> satisfy in full all administrative liabilities incurred by the Debtors.**  There can be no better result in these chapter 11 cases for all parties involved.  The short delay in payment to the Pre-Sale Lenders on account of the Disputed Indebtedness should not be an impediment to the Court approving the Sale.  The Disputed Indebtedness constitute **less than 2**% of the principal of the Mortgage Loan, and any amounts actually due to the Pre-Sale Lenders on account of such disputed amounts will promptly be paid out of escrow upon a subsequent finding of this Court.

15.     On the other hand, any delay in obtaining approval of the sale of the Properties will likely jeopardize the Refinancing and the ability of the Debtors to speedily and successfully conclude these chapter 11 cases.  The Post-Sale Lenders have required, as a condition precedent to closing, that the Properties be transferred to the Purchaser.  The Refinancing therefore cannot close without the Sale Order.

16.     Further, any delay to the Sale will likely result in a depreciation in value of the Properties.  The values of the Properties are primarily dependant on the Debtors' ability to attract new tenants.  The Debtors are having difficulties, however, signing new tenants into Properties that are tainted with an unresolved bankruptcy case.  An expedited Sale will remove the taint of bankruptcy from the Properties and enable the rental process to recommence in earnest.  For the foregoing reasons, it therefore is essential that the Sale Order be entered on an expedited basis.

### <u>Debtors Have Satisfied All of the Other Section 363(b) Factors</u>

17.     In addition to requiring that debtors establish a sound business justification for a proposed 363 sale, courts have also inquired whether:  (a) adequate and reasonable notice of the sale has been provided to interested parties; (b) the purchase price is fair and reasonable; and (c)

the sale has been proposed in good faith. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Betty Owens Schs., Inc.*, 1997 WL 188127, at *4 (S.D.N.Y. Apr. 17, 1997); *accord In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. May 20, 2002). These factors are all satisfied here.

18. <u>First</u>, the notice provided to interested parties of the Sale is adequate given the circumstances surrounding the proposed Sale. The U.S. Supreme Court has repeatedly emphasized the flexibility of the due process requirement. *See*, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands"). Negotiations concerning the Refinancing have been ongoing, and the closing has only recently come into focus. The Debtors therefore were not in a position to file this Motion at an earlier date. Notwithstanding the shortening of notice, all creditors will be paid in full through the Sale, so no party is materially affected or disadvantaged by the relief requested herein. In addition, the Special Servicer is the only party that has made an appearance in these chapter 11 cases to date.

19. <u>Second</u>, the Sale Price is fair and reasonable. Simply put, the Sale will result in payment in full of all creditors of the Debtors and satisfy in full all administrative liabilities incurred by the Debtors. There can be no argument that such an outcome is unfair or unreasonable to any party.

20. <u>Third</u>, the Sale has been proposed in good faith. There has been no fraud or collusion between the Post-Sale Lenders, the Purchaser and the Debtors, or an attempt to take unfair advantage of other creditors of the Debtors. To the contrary, the Sale Price is more than

sufficient to pay all creditors in full.  The Sale Transaction was proposed in good faith and will

ensure the successful conclusion of these chapter 11 cases.

## The Sale Must Be Free and Clear of Claims and Encumbrances

21.     It is appropriate that the Properties be sold free and clear of Claims and

Encumbrances, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.  Section 363(f)

of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and
> clear of any interest in such property of an entity other than the estate, only if—
>
> > (1) applicable nonbankruptcy law permits sale of such property free and
> > clear of such interest;
> > (2) such entity consents;
> > (3) such interest is a lien and the price at which such property is to be sold
> > is greater than the aggregate value of all liens on such property;
> > (4) such interest is in bona fide dispute; or
> > (5) such entity could be compelled, in a legal or equitable proceeding, to
> > accept a money satisfaction of such interest.

11 U.S.C. 363(f); *see In re Smart World Tech. LLC*, 423 F.3d 166, 169 n.3 (2d Cir. 2005)

("Section 363 permits sales of assets free and clear of claims and interests.  It thus allows

purchasers . . . to acquire assets [from a debtor] without any accompanying liabilities"); *In re

Dundee Equity Corp.*, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is

in the disjunctive, such that the sale of the interest concerned may occur if any one of the

conditions of § 363(f) have been met").

22.     It is necessary to authorize the sale of the Properties free and clear of all Claims

and Encumbrances in order for the Refinancing to close, because the Purchaser is obligated

under the terms of the Refinancing to grant the Post-Sale Lenders a first-priority lien on the

newly-acquired Properties.  Moreover, to the extent a specific lien, claim, encumbrance or other

interest does not satisfy the consent requirement of section 363(f)(2), such lien, claim,

encumbrance or other interest satisfies one or more of the other conditions set forth in section 363(f) and will be adequately protected by attachment to the net proceeds of the sale, subject to any claims and defenses the Debtors may possess.  For example, each of the parties holding liens on the Properties could be compelled to accept a monetary satisfaction of such interests, satisfying section 363(f)(5).  Accordingly, the Properties should be transferred to the Purchaser free and clear of all Claims and Encumbrances.

**Assumption and Assignment of Executory Contracts and Unexpired Leases**

23.      In accordance with the terms of the Sale Order, all executory contracts and unexpired leases (collectively, the "Assigned Contracts") that exist between the Debtors and any person (each a "Contract Counterparty") shall be deemed assumed by the Debtors and assigned to the Purchaser upon the Closing Date.  The Purchaser shall assume all liabilities in respect of the Cure Costs[8] relating to the Assigned Contracts.

24.      Section 365(a) of the Bankruptcy Code provides in relevant part that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  In determining whether an executory contract or unexpired lease should be assumed, courts apply the "business judgment" test.  *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985)* ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."); *In re*

---

[8]      The "Cure Costs" include any and all amounts necessary for the Debtors to be able to assume and assign the Assigned Contracts to the Purchaser pursuant to section 365 of the Bankruptcy Code, including without limitation, all monetary defaults, if any, and actual pecuniary losses, if any, that have resulted from such defaults.

*Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("The decision to assume or reject an executory contract is within the sound business judgment of the debtor-in-possession. . . ."). Moreover, section 365(b)(1) of the Bankruptcy Code requires that the Debtors cure, or provide adequate assurance that it will promptly cure, any outstanding defaults under the Assigned Contracts in connection with the assumption and assignment of these agreements to Purchaser.

25.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor in possession may assign an executory contract or lease if:  (a) the trustee assumes such contract or lease in accordance with the provisions of this section; and (b) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

26.     The Debtors' assumption of the Assigned Contracts is a sound exercise of their business judgment and will confer a clear benefit to their estates.  Notably, because the Purchaser is purchasing the Properties in order to continue the operation of the Debtors' business, the

Purchaser needs the Assigned Contracts to be retained. In accordance with the Sale Order, all applicable Cure Costs in connection with the Assigned Contracts will be paid. Furthermore, the Purchaser has sufficient assets to continue the performance called for by those agreements. To the extent necessary to satisfy the Court, the Debtors will demonstrate at the hearing on this Motion that the Purchaser (a) has assets sufficient to provide adequate assurance of future performance and (b) is willing and able to perform under the Assigned Contracts from and after the Closing Date. The hearing therefore will provide the Court and other interested parties the opportunity to evaluate the ability of the Purchaser to provide adequate assurance of future performance under the Assigned Contracts, as required by section 365(b)(1)(C) of the Bankruptcy Code. Accordingly, the Debtors should be authorized to assume and assign the Assigned Contracts.

**The Court Should Waive the Period Required by Bankruptcy Rule 6004 (h)**

27. Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 10 days after entry of the order. *See* Fed. R. Bankr. P. 6004(h). To enable the Refinancing to close, it is critical that the Debtors consummate the Sale immediately. Accordingly, the Debtors request that the Court waive the 10-day stay periods under Rules 6004(h) to file any appeal.

**NOTICE**

28. No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases. The Debtors have provided notice of this Motion by either electronic mail, facsimile or overnight mail to:

     a. the Office of the United States Trustee for the Southern District of New York;

b.  the Debtors' unsecured creditors, as identified in their schedules of assets and liabilities;

c.  counsel to the Debtors' equity holders;

d.  counsel to the Special Servicer;

e.  all counterparties to Assigned Contracts;

f.  all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002;

g.  all taxing authorities and other governmental agencies having jurisdiction over any of the Properties, including the Internal Revenue Service; and

h.  all persons known or reasonably believed to have asserted Claims or Encumbrances on any of the Properties.

29.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request entry of the attached order granting the

relief requested herein and such other and further relief as is warranted and just.

Dated: March 18, 2011
       New York, New York

        /s/ Harvey A. Strickon_____
        Harvey A. Strickon, Esq.
        Bryan R. Kaplan, Esq.
        PAUL, HASTINGS, JANOFSKY &
        WALKER LLP
        Park Avenue Tower
        75 E. 55th Street, First Floor
        New York, New York 10022
        Telephone: (212) 318-6000
        Facsimile:  (212) 319-4090

        *Counsel to the Debtors*
        *and Debtors in Possession*

# EXHIBIT 1

## PROPOSED SALE ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **PENZANCE CASCADES NORTH, LLC,** *et al.*, | **Case No. 10-16643 (REG)** |
| **Debtors.** | **(Jointly Administered)** |

## ORDER (A) AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) PAYMENT OF AMOUNTS UNDER MORTGAGE LOAN; (B) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

Upon consideration of the motion dated March 18, 2011 (the "Motion") of Penzance Cascades North, LLC and its affiliated debtors, as debtors in possession (collectively, the "Debtors") for an order (the "Sale Order") (A) authorizing (i) the sale (the "Sale") of the Properties[1] free and clear of all Claims and Encumbrances and (ii) payment of amounts under the Mortgage Loan; (B) approving assumption and assignment of executory contracts and unexpired leases; and (C) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York of Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.)*; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and upon all of the proceedings had before the Court; and this

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT**:

<u>**Jurisdiction, Final Order and Statutory Predicates**</u>

1. This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and the Sale Order shall be immediately effective upon its entry.

3. The statutory predicates for the relief requested in the Motion are sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007 and 9014.

<u>**Notice of the Sale**</u>

4. Notice of the Motion and a reasonable opportunity to object or be heard with respect to the Motion and relief requested therein has been afforded to all known interested persons and entities entitled to receive such notice, including, but not limited to the following parties:

(i)     the Office of the United States Trustee for the Southern District of New York;

(ii)    the Debtors' unsecured creditors, as identified in their schedules of assets and liabilities;

(iii)   counsel to the Debtors' equity holders;

(iv)    counsel to the Special Servicer;

(v)     all counterparties to Assigned Contracts;

(vi)    all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002;

(vii)   all taxing authorities and other governmental agencies having jurisdiction over any of the Properties, including the Internal Revenue Service; and

(viii)  all persons known or reasonably believed to have asserted Claims or Encumbrances on any of the Properties.

### **Fair and Adequate Consideration**

5.      The consideration provided by the Purchaser is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

### **Validity of Sale**

6.      The Sale of each of the Properties to the Purchaser will be as of the Closing Date a legal, valid, and effective sale of such Properties, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Properties free and clear of all Claims and Encumbrances accruing, arising or relating thereto any time prior to the Closing Date.

### **Section 363(f) is Satisfied**

7.      The Purchaser would not consummate the transactions described in the Motion and contemplated in this Sale Order if the sale of the Properties to the Purchaser were not free and clear of all Claims and Encumbrances of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of such Claims and Encumbrances.

8. The Debtors may sell the Properties free and clear of all Claims and Encumbrances against the Purchaser and the Debtors, their respective estates or any of the Properties because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Claims and Encumbrances against the Debtors, their respective estates or any of the Properties who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Claims and Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Claims and Encumbrances, if any, in each instance against the Debtors, their respective estates or any of the Properties, attach to the proceeds of the Sale ultimately attributable to the Properties in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

## Compelling Circumstances for an Immediate Sale

9. To maximize the value of the Properties and preserve the viability of the business to which the Properties relate, it is essential that the Sale occur by the Closing Date. Time is of the essence in consummating the Sale.

10. The consummation of the transactions described in the Motion is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f) and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

11. The Sale does not constitute a de facto plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting

rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity Encumbrances, compromise controversies or extend debt maturities.

**Good Faith of the Purchaser**

12.      The Purchaser is purchasing the Properties in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

13.      <u>Relief Granted</u>.  The relief requested in the Motion is granted and approved, and the Sale is approved as set forth in this Sale Order.

14.      <u>Objections Overruled</u>.  Any and all objections to the Motion, or the relief requested therein that has not been withdrawn, waived, or settled or otherwise resolved as announced to this Court at a hearing or by stipulation filed with this Court or as otherwise provided in this Sale Order, and all reservations of rights included therein, are hereby overruled on the merits.

**Approval of the Sale**

15.      <u>Authorization to Consummate Transactions</u>.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and directed to consummate the Sale of the Properties to the Purchaser in the manner described in the Motion and in accordance with this Sale Order.  The Debtors have full corporate power and authority to consummate the Sale and

5

execute and deliver all documents contemplated thereby, and no consents or approvals are required for the Debtors to consummate the Sale. The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement all instruments and documents that may be reasonable necessary, convenient or desirable to implement the Sale and effectuate the provisions of this Sale Order, and to take all further actions as may be requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to Purchaser or reducing to possession, the Properties, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Sale.

16.    <u>Order Binding on All Parties</u>.  This Sale Order shall be binding in all respects upon the Debtors, their respective estates, the Pre-Sale Lenders, all creditors, all holders of equity interests in any Debtor, all holders of any Claim(s) (whether known or unknown) against any Debtor, any holders of Claims and Encumbrances against or on all or any portion of the Properties, the Purchaser and all successors and assigns of the Purchaser, and any trustees, examiners, responsible officers, estate representatives, or similar entities for any of the Debtors, if any, subsequently appointed in the Bankruptcy Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Bankruptcy Cases.  This Sale Order shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser, the Post-Sale Lender, and their respective successors and assigns.

<b><u>Sale of the Properties</u></b>

17.    <u>Sale of Properties Authorized</u>.  Pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f), the Debtors are authorized to transfer the Properties to the Purchaser.

18.    <u>Sale "As Is", Etc</u>.  The Properties shall be sold to the Purchaser "as is, where is" with all faults upon and as of the Closing Date and such sale shall constitute a legal, valid, binding, and effective sale of such Properties and, upon the Debtors' receipt of the Sale Price,

shall be free and clear of all Claims and Encumbrances.  Upon the Closing, the Purchaser shall

take title to and possession of the Properties free and clear of all Claims and Encumbrances.

19.      Surrender of Purchased Assets by Third Parties.  All entities that are in possession

of some or all of the Properties on the Closing Date are directed to surrender possession of such

Properties to the Purchaser on the Closing Date.  All entities are hereby forever prohibited and

enjoined from taking any action that would adversely affect or interfere with the ability of the

Debtors to sell the Properties to the Purchaser in the manner described in the Motion and

contemplated in this Sale Order.

20.      Sale Free and Clear of Claims and Encumbrances.  Pursuant to section 363(f) of

the Bankruptcy Code, the transfer of title to the Properties shall be free and clear of any and all

Claims and Encumbrances.  The Purchaser shall not be liable as a successor under any theory of

successor liability for Claims and Encumbrances that encumber or relate to the Properties or the

Debtors.

21.      Creditors Directed to Release Claims and Encumbrances.  On the Closing Date,

each creditor shall be authorized and directed to execute such documents and take all other

actions as may be necessary to release Claims and Encumbrances on the Properties, if any, as

provided for herein, as such Claims and Encumbrances may have been recorded or may

otherwise exist.

22.      Debtors' Authorization to Record Releases.  If any person or entity which has

filed statements or other documents or agreements evidencing Claims and Encumbrances on or

in all or any portion of the Properties shall not have delivered to the Debtors prior to the Closing,

in proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, releases of liens and easements, and any other documents necessary

7

or desirable to the Debtors for the purpose of documenting the release of all Claims and Encumbrances, which the person or entity has or may assert with respect to all or any portion of the Properties, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Properties. The transactions authorized herein shall be of full force and effect, regardless of any Debtors' lack of good standing in any jurisdiction in which it is formed or authorized to transact business. A certified copy of this Sale Order may be filed with the appropriate clerk(s) and/or recorded with the recorder(s) which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims and Encumbrances in the Properties as of the Closing Date of any kind or nature whatsoever.

23. <u>Recording Offices</u>. This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions described in the Motion and contemplated in this Sale Order.

**Assigned Contracts**

24. <u>Authorization to Assume and Assign</u>. The Debtors are authorized and empowered to assume and assign each of the Assigned Contracts to the Purchaser free and clear

of all Encumbrances (other than Cure Costs) as of the Closing Date. The payment of the applicable Cure Costs (if any) by the Purchaser shall (a) effect a cure or adequate assurance of cure of all defaults existing thereunder as of the Petition Date and (b) compensate for any actual pecuniary loss to a Contract Counterparty resulting from such default. The Purchaser shall then have assumed the Assigned Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assigned Contracts shall not be a default thereunder. After the payment of the relevant Cure Costs, none of the Debtors, or the Purchaser, shall have any further liabilities to the Contract Counterparties other than the Purchaser's obligations under the Assigned Contracts or that accrue and become due and payable on or after the Closing Date.

25. <u>Assignment Requirements Satisfied</u>. Any provisions in any Assigned Contracts that restrict, prohibit or condition the assignment of such Assigned Contracts or allow the party to such Assigned Contracts to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Assigned Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Contracts.

26. <u>Section 365(k)</u>. Upon the Closing, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

27.     <u>No Default</u>.  Upon the payment of the applicable Cure Costs, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist under the Assigned Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

28.     <u>Adequate Assurance Provided</u>.  The Purchaser has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

29.     <u>No Fees</u>.  There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assigned Contracts.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Assigned Contracts.

30.     <u>365 Injunction</u>.  Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, other than the right to payment of the Cure Costs, if any, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors or the Purchaser any assignment fee, default, breach or claim or pecuniary loss arising under or related to the Assigned Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing.

**Other Provisions**

31.     <u>Payment to Pre-Sale Lenders on Account of Undisputed Indebtedness</u>.  On the Closing Date and immediately following the Closing, the Debtors shall pay in cash the amount of the Undisputed Indebtedness to the Special Servicer in full satisfaction and on account of the Undisputed Indebtedness.

32.     <u>Payment into Escrow Account on Account of Disputed Indebtedness</u>.  On the

Closing Date and immediately following the Closing, the Debtors shall deposit cash in the

amount of the Disputed Indebtedness to an escrow agent (the "<u>Escrow Agent</u>") mutually

agreeable to the Debtors and the Special Servicer on account of the Disputed Indebtedness.  The

Escrow Agent shall hold the escrowed amounts pending further order of this Court.  A hearing to

consider the Disputed Indebtedness is scheduled for _____, 2011 at __:__ __.m. (Eastern

Time) before the Honorable Robert E. Gerber, United States Bankruptcy Judge, Courtroom 621,

at One Bowling Green, New York, the United States Bankruptcy Court for the Southern District

of New York.

33.     <u>Segregation of Wind Down Funds</u>.  On the Closing Date, the Debtors will deposit

cash in the amount of $1,000,000 into a newly created, segregated and interest bearing account

(the "<u>Wind Down Account</u>").  Upon payment of all Wind Down Expenses, the Debtors shall

remit the balance remaining in the Wind Down Account, if any, to the Purchaser.

34.     <u>Injunction</u>.  Effective upon the Closing Date, all persons and entities, including

but not limited to holders of Claims and Encumbrances, are forever barred, estopped, prohibited

and permanently enjoined from commencing or continuing in any manner any action or other

proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding

against the Purchaser, its successors and assigns, or the Properties, with respect to any (a) Claims

and Encumbrances arising under, out of, in connection with or in any way relating to the

Debtors, the Purchaser, the Properties, the Sale, or the operation of the Properties prior to the

Closing, or (b) successor liability, including, without limitation, the following actions:

(i) commencing or continuing in any manner any action or other proceeding against the

Purchaser, its successors or assigns, the Properties or its properties; (ii) enforcing, attaching,

collecting or recovering in any manner any judgment, award, decree or order against the Purchasers, its successors, the Properties or its properties; (iii) creating, perfecting or enforcing any Claims and Encumbrances against the Purchaser, its successors or assigns, the Properties or its properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Properties or conduct any of the businesses operated with the Properties.

35. <u>No Liability for Claims Against Debtors</u>. Except as otherwise expressly set forth in this Sale Order, the Purchaser and its employees, officers, directors, advisors, lenders, affiliates, owners, successors and assigns shall not have any liability (successor, vicarious or otherwise), or any other obligation of the Debtors. The Purchaser has given substantial consideration for the benefit of the holders of any Claims and Encumbrances. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Claims and Encumbrances against or interests in the Debtors or any of the Properties.

36. <u>Plan Not to Conflict</u>. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) the Debtors' bankruptcy cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any

related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the terms of this Sale Order.

37.     <u>Good Faith</u>.  The transactions described in the Motion and contemplated in this Sale Order are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and consummation of such Sale are duly stayed pending such appeal.  The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and granted, the full protections of section 363(m) of the Bankruptcy Code.

38.     <u>Effective Immediately</u>.  Pursuant to Bankruptcy Rules 7062, 9014 and 6004(h), this Sale Order shall be effective immediately upon entry and the Debtors and the Purchaser are authorized to effectuate the Sale immediately upon entry of this Sale Order.

39.     <u>Bulk Sales Law</u>.  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

40.     <u>Timing</u>.  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

41.     <u>Authorization to Effect Order</u>.  The Debtors are authorized to take all actions necessary to effect the relief granted pursuant to this Sale Order in accordance with the Motion.

42.     <u>Automatic Stay</u>. The automatic stay pursuant to Section 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court, to (i) allow the Purchaser to deliver any notices and (ii) allow the Purchaser to take any and all actions described in the Motion in accordance with the terms of this Sale Order.

43. <u>Order to Govern</u>. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in the Debtors' bankruptcy cases, the terms of this Sale Order shall govern.

44. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the Sale, this Sale Order and the matters contemplated herein.

Dated: _____, 2011
       New York, New York

_____
HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE